The Bronx Gas and Electric Company, Appellant, *v.* The Public Service Commission of the State of New York, First District, and Others, Respondents.

First Department, December 19, 1919.

Public service corporations — suit against Public Service Commission to have statutory rate for gas declared to be confiscatory — pleading — complaint stating cause of action — constitutional law — respective powers of court and Legislature — when court cannot determine just and reasonable rates — courts may not legislate — when determination by Supreme Court of United States binding upon our courts — power of Public Service Commission to act when legislative rate is declared to be unconstitutional — power of Legislature to discriminate between localities and companies as to rates — value of franchise not included in property of public service corporation.

A complaint in an action brought by a gas and electric company in the city of New York against the Public Service Commission for the First District, which in substance alleges that the maximum rate which the plaintiff may charge for gas as fixed by certain statutes is insufficient to give a fair and adequate return to the plaintiff, and on the contrary, owing to the increased cost of production, has caused an actual deficit in the yearly business of the plaintiff, shows that the statute, although valid in its inception, has by reason of changed conditions become unconstitutional and void because confiscatory and hence states a cause of action of which the court has jurisdiction as against a demurrer for insufficiency.

But in said suit the court has no power to determine, as demanded by the plaintiff, that a proposed increase in the rates charged by the plaintiff to one dollar and fifty cents per 1,000 cubic feet will be a just and reasonable rate, or to fix what will be a just rate and enjoin the Public Service Commission from interfering with the collection of said rate, since the right to control and regulate the charges of a public service corporation is vested in the Legislature and not in the judicial branch of the government.

The refusal of the court to exercise the power to fix rates does not exist only where a rate-making power exists in a Public Service Commission, or similar body, for such Commission merely exercises power primarily vested in the Legislature and delegated by it.

While the Supreme Court has jurisdiction to hear and determine any justiciable question of which the common law or chancery courts of England would have had cognizance, subject only to territorial limitations, it has no power to legislate, which power, under the Constitution, is vested solely in the Senate and Assembly.

The court can only declare invalid an act of the Legislature which contravenes the Constitution of this State, or of the United States, and even in

that case may not promulgate by decree another act in its place which the court deems, constitutional.

Where a rate fixed by the Legislature, or a subordinate body to whom the power has been delegated does not furnish a fair return upon the reasonable value of property at the time it is being devoted to public use the act is confiscatory in its effect and violates the Constitution of the United States, though such act is presumed to be constitutional and will only be declared unconstitutional upon clear and convincing proof.

*It seems*, that since the Supreme Court of the United States refused to declare chapter 125 of the Laws of 1906 unconstitutional upon the testimony of experts, the rate set thereby is binding upon the plaintiff until such time as there may be an adjudication that it is in fact confiscatory.

Under the statute the Public Service Commission has no power to prescribe a rate chargeable by public service corporations in excess of the rate fixed by statute, but, *it seems*, that if the courts declare the statutory rate to be unconstitutional and void then there is no rate authorized by statute and the Public Service Commission may act under its delegated powers.

The court expresses the hope that prohibition against an increase of rates by the Public Service Commission above those fixed by statute may be removed so that conflicting claims between consumers and public service corporations as to reasonable rates may be determined by the Commission.

The court will not declare portions of the statute aforesaid to be unconstitutional upon the ground that other companies, the rate of whose charges has not been fixed by statute, may resort to the Public Service Commission, while the plaintiff, whose rate has been fixed, cannot do so, for the prohibition applies equally to all other companies similarly situated and the Legislature may establish a rate for one locality without fixing a rate for other localities and may fix the rate as to some companies and provide a subordinate body to fix the rate as to others, so long as there is no discrimination between the members of a class.

The plaintiff is not entitled to have its franchise included in its property upon the value of which an adequate return is to be estimated.

APPEAL by the plaintiff, The Bronx Gas and Electric Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of July, 1919, denying plaintiff's motion, made pursuant to section 976 of the Code of Civil Procedure, to overrule the demurrer interposed to the first cause of action alleged in the complaint and for judgment on the pleadings.

The opinion of the Special Term is reported in *Bronx Gas & Electric Co.* v. *Pub. Serv. Comm.* (108 Misc. Rep. 180).

*Edward L. Blackman* of counsel [*Atwater & Cruikshank,* attorneys], for the appellant.

*Terence Farley* of counsel [*George H. Stover* with him on the brief], for the respondent Public Service Commission.

*Judson Hyatt* of counsel [*John P. O'Brien* with him on the brief; *William P. Burr, Corporation Counsel*], for the City of New York, as *amicus curiæ.*

PAGE, J.:

The plaintiff is a public service corporation, incorporated in 1893 pursuant to the Transportation Corporations Law of the State of New York (Gen. Laws, chap. 40; Laws of 1890, chap. 566) for the purpose of making and furnishing illuminating gas and electricity in certain towns and villages which have since then been annexed to and become a part of the city of New York, being a portion of the borough of The Bronx, and the plaintiff is now supplying the inhabitants of that territory with gas and electricity under franchises duly obtained for that purpose. The complaint is quite long, but may be briefly summarized. That by chapter 736 of the Laws of 1905 all companies furnishing gas to the city of New York were forbidden to charge or receive in excess of seventy-five cents per 1,000 cubic feet; that the plaintiff furnished gas to the city and the city has refused to pay more than said sum; that the same was inadequate, and has been received under protest by plaintiff because of such inadequacy; that by chapter 125 of the Laws of 1906 no company furnishing gas in the territory in which the plaintiff operated was allowed to charge or receive in excess of the following sums per 1,000 cubic feet: during the years of 1906, 1907 and 1908, $1.15; 1909, $1.10; 1910, $1.05, and thereafter $1; that since January, 1917, the cost of production of plaintiff's gas has increased so much by reason of the general advance in the price of labor and supplies that it has been costing the plaintiff much more than $1 to produce 1,000 cubic feet of gas. In the year 1917 the operating expenses of its gas business exceeded the income by $177.38, and if interest on bonded indebtedness be added to this the deficit would be $32,855.53. In 1918 the excess of expense over income was $38,477.66, and with interest on bonded indebtedness added, $72,446.42. The expenses for 1919 have been heavier than in the other two years and the deficit will, therefore, be larger.

On the theory that the statutes fixing the rate of charges for gas were unconstitutional and void, on February 8, 1918, the plaintiff applied to the Public Service Commission for an order allowing it to charge one dollar and fifty cents per 1,000 cubic feet of gas. The Commission denied the application on the ground of lack of power to act in the premises. This court affirmed the proceedings of the Commission (185 App. Div. 891). The plaintiff then undertook to establish the one dollar and fifty cent rate and on March 11, 1919, filed with the Public Service Commission a notice that thirty days thereafter its rate for gas supplied to its customers would be one dollar and fifty cents per 1,000 cubic feet. The defendants immediately threatened to prevent this increase by prosecutions and actions to recover penalties. There is a second cause of action alleged which is not involved in this appeal. The following is a summary of plaintiff's prayer for judgment:

1. That chapter 125 of the Laws of 1906, in so far as it limits plaintiff to a charge not to exceed one dollar per 1,000 cubic feet for gas, be declared at the present time and since January 1, 1917, unreasonable, confiscatory of plaintiff's property and void, and that the same is not in force as to plaintiff and has been without force or effect since January 1, 1917.

2. For the same relief from chapter 736 of the Laws of 1905.

3. That the provisions of sections 68 [66], 71 and 72 of the Public Service Commissions Law, except the provision in section 66, subdivision 12, as to filing schedules, be declared unconstitutional and void and not in force as to plaintiff.

4. That the defendants and each of them be jointly and severally enjoined and restrained from in any manner interfering with or obstructing the plaintiff in the collection or recovery of the rate or price of one dollar and fifty cents per 1,000 cubic feet or such other rate or price as to the court may seem just or reasonable for gas furnished by the plaintiff.

5. That the penalties fixed by sections 58 and 73 of the Public Service Commissions Law of $1,000 for each violation thereof be declared unreasonable, oppressive, unconstitutional and void, and that the defendants jointly and severally be enjoined and restrained from enforcing or attempting to enforce said penalties or any penalty against the plaintiff for charging or collecting for its gas at said rate of one dollar and

fifty cents per 1,000 cubic feet or such other reasonable rate as the court may fix, and from enforcing or attempting to enforce any penalty against plaintiff for collecting or charging in the future more than one dollar per 1,000 cubic feet for gas and from bringing or commencing any actions, proceedings or prosecutions, civil or criminal, to enforce said penalties or any of them, and from in any way interfering with the plaintiff or its property or business by the commencement or prosecution of any civil or criminal action or proceeding founded upon the violation of said statutes or either of them.

6. That the Public Service Commission, its members and their successors in office, be enjoined and restrained from attempting to fix or fixing any rate or price to be charged by plaintiff for gas and from beginning or conducting any proceeding against plaintiff or assuming any jurisdiction over it for that purpose or for the purpose of preventing plaintiff from demanding or collecting for its gas at the rate of one dollar and fifty cents per 1,000 cubic feet, or at such other rate as to the court may seem proper.

The defendant the Public Service Commission has demurred to the first cause of action upon the grounds, *first,* that the court has not jurisdiction of the subject of the action; *second,* that the facts stated are not sufficient to constitute a cause of action.

If it shall be proved upon the trial that the facts alleged in the complaint are true with reference to the cost of the production and distribution of gas and that the income derived from the sale thereof at the rate fixed by chapter 125 of the Laws of 1906 is insufficient to give a fair and adequate return, but on the contrary occasions a deficit, the statute although valid in its inception would have become, by reason of changed conditions, unconstitutional and void, because confiscatory, and the court has jurisdiction to hear and determine this question. (*Municipal Gas Co.* v. *Public Service Commission,* 225 N. Y. 89.) The complaint, therefore, to this extent at least states facts sufficient to constitute a cause of action of which the court would have jurisdiction. We might rest our decision on this statement. It is well settled that if the facts stated

are sufficient to constitute any cause of action the complaint is good as against a demurrer for insufficiency. There are, however, facts alleged upon which further relief is demanded than that appropriate to the declaration of the act of 1906 to be unconstitutional which have been fully and ably discussed by counsel, which we feel should be considered at this time that the issues upon the trial may be limited and expense saved to the litigants and also that these questions, involving the public interest, which may be raised by other like public service corporations, situated as is this plaintiff, should be now determined. *First.* The plaintiff asks this court to determine that one dollar and fifty cents per 1,000 cubic feet is a just and reasonable rate for it to charge for its gas, or to fix what would be a just and reasonable rate, and to enjoin the Public Service Commission and the other defendants from interfering with the collection of such rate by any action or proceeding, civil or criminal. This is beyond the limits of the jurisdiction of the court.

It is a principle of the common law early declared and long recognized that where any one devotes his property to a use in which the public has an interest, he must submit to public regulation and control to give proper and adequate service and to charge only a reasonable price. The right to exercise this control and regulation has always been vested in the Legislature and not in the judicial branch of the government. As was said by the United States Supreme Court in the leading case in this country on this subject: " It is insisted, however, that the owner of property is entitled to a reasonable compensation for its use, even though it be clothed with a public interest, and that what is reasonable is a judicial and not a legislative question. As has already been shown, the practice has been otherwise. In countries where the common law prevails, it has been customary from time immemorial for the Legislature to declare what shall be a reasonable compensation under such circumstances, or, perhaps more properly speaking, to fix a maximum beyond which any charge made would be unreasonable." (*Munn* v. *Illinois*, 94 U. S. 113, 133.) In one of the most recent cases the same court said: " It has frequently been pointed out that prescribing rates for the future is an act legislative, and not

judicial, in kind." (*Louisville & Nashville R. R. Co.* v. *Garrett,* 231 U. S. 298, 305.) A multiplication of citations is not necessary for there are none to the contrary. The regulation of public service corporations and the fixing of rates that they may charge belong to the legislative department and not to the judicial powers. The learned counsel for the appellant contends that the courts only refuse to exercise the power to fix rates where the rate-making power exists in a Public Service Commission or similar body. He has, however, failed to appreciate that a Public Service Commission, or a similar body, only exercises a power that is primarily vested in the Legislature, and by it delegated to the subordinate body. Unquestionably the Supreme Court of New York has plenary jurisdiction. The act establishing the Supreme Court provided that such court was "fully Impowered and Authorized to have Cognizance, of all pleas, Civill Criminall, and Mixt, as fully & amply to all Intents & purposes whatsoever, as the Courts of Kings Bench, Comon Pleas, & Exchequer within their Majestyes Kingdome of England, have or ought to have." (Passed May 6, 1691, 1 Colonial Laws of New York [Comp. Stat. Rev. Comm.], 229, chap. 4.) The court was continued with these powers upon the organization of the State. In 1846 the Court of Chancery was abolished and the Supreme Court given general jurisdiction in law and equity. (Const. 1846, art. 6, § 3.) Therefore, the court has jurisdiction to hear and determine any justiciable question of which the Common Law or Chancery Courts of England would have had cognizance, subject only to territorial limitations. The power to legislate was never given to the court. "The legislative power of this State shall be vested in the Senate and Assembly." (Const. art. 3, § 1.) These delimitations of power must be respected and observed, and when the matter is of legislative cognizance the court should not through any argument of necessity or hardship, arising either from a failure of the Legislature to act or from an unwise action on its part, assume the burden of legislation. When the Legislature has acted, if it is claimed that it has exceeded its powers, or that the act contravenes the Constitution of this State or of the United States, then a justiciable question arises of which the court unquestionably

has jurisdiction, only, however, to pass upon the constitutionality of the act, and not to promulgate by decree an act in its place which the court deems constitutional.

A corporation engaged in a public service, or a person devoting his property to such use, is bound to render a reasonably adequate service for which he is entitled to exact a fair charge. It is well settled, where a rate fixed by the Legislature, or a subordinate body to whom the power has been delegated, does not furnish a fair return upon the reasonable value of the property at the time it is being devoted to the public use, that such act is so confiscatory in its effect as to violate the Constitution of the United States. (*Knoxville* v. *Water Co.*, 212 U. S. 1, 16, and cases there discussed; *Willcox* v. *Consolidated Gas Co.*, Id. 41.) The act of the Legislature is presumed to be constitutional and should only be declared unconstitutional upon clear and convincing proof.

In *Willcox* v. *Consolidated Gas Co.* (*supra*) the Supreme Court of the United States refused to declare chapter 125 of the Laws of 1906 unconstitutional upon the testimony of experts as to the effect of the reduced rate, and remitted the company to the test of practical experience. The wisdom of that decision has been justified. The decision was rendered in January, 1909, and until recently no question has arisen as to the adequacy of the rate. (See, also, *Northern Pacific Railway* v. *North Dakota*, 216 U. S. 579; 236 id. 585.) Therefore, until it is adjudicated that the rate is in fact confiscatory, the act in our opinion should be held binding upon the plaintiff. It is urged that as it has been determined that the Public Service Commission has no power to prescribe a rate in excess of a rate fixed by statute (*People ex rel. Municipal Gas Co.* v. *Public Service Commission*, 224 N. Y. 156), the court should determine the proper rate from the evidence adduced before it, as otherwise, if the court should determine the statutory rate to be unconstitutional as to this company, it would be afforded no relief, but would be compelled to await a session of the Legislature and the uncertainty of an appeal to it for relief. If this be the true intent of the decision in the case last above cited, the plaintiff is in no worse position than it would have been had no Public Service Commission been established. In my opinion such a result does not follow

from that decision. In that case the gas company applied to the Public Service Commission to establish a rate which exceeded a rate fixed by a statute which was then in full force and effect, in other words to assume to declare an act of the Legislature unconstitutional, to exercise the highest of judicial powers, notwithstanding the Legislature in delegating power to the Commission had expressly provided that it could only prescribe a rate not exceeding that fixed by statute. When, however, the courts have declared a statutory rate unconstitutional and void, then there is no rate authorized by statute, and in my opinion the powers delegated to the Commission to deal with a case where no statutory provision existed, would come into full force and effect. By the enactment of the Public Service Commissions Law (Laws of 1907, chap. 429, now Consol. Laws, chap. 48; Laws of 1910, chap. 480) the Legislature intended to establish permanently a tribunal for the adjustment and determination of conflicting claims of consumers and corporations as to what were reasonable rates to be charged. (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123, 150; *Matter of Quinby* v. *Public Service Comm.*, 223 id. 244, 258.) The Legislature in 1910 limited the power of the Commission to " fix the maximum price of gas or electricity *not exceeding that fixed by statute* to be charged by such corporation." (§ 72.) The italicized words were inserted by amendment, chapter 480 of the Laws of 1910. The reason for this is apparent if we resort to contemporaneous circumstances, as shown by legislative and court records. In 1905 a joint committee of the Senate and Assembly was appointed to investigate the gas and electric lighting companies of the city of New York. As a result of this investigation the committee recommended the adoption of various bills, among which chapter 736 of the Laws of 1905, involved in this appeal, and the act establishing a Commission of Gas and Electricity (Laws of 1905, chap. 737) became laws. The bill which afterwards became chapter 125 of the Laws of 1906 was also recommended by the committee, but was defeated, lacking one vote of a majority. This bill was introduced in the Legislature of 1906 and passed, and became a law April 3, 1906. The gas companies affected by the act, that had strenuously opposed the adoption of the legislation, on May 1,

1906, filed bills in the United States Circuit Court for the Southern District of New York, for an injunction restraining the officers charged with the duty of enforcing these statutes, alleging among other things that the rates therein fixed were so inadequate as to be confiscatory and, therefore, were void. One of these suits was tried, that brought by the Consolidated Gas Company, and finally determined in January, 1909.  (*Consolidated Gas Co.* v. *City of New York,* 157 Fed. Rep. 849; *sub nom. Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19.) The Public Service Commissions Law passed the Legislature and became a law June 6, 1907 (Laws of 1907, chap. 429). Those who drafted the amendment, knowing that the legislative committee had thoroughly investigated the subject before recommending the adoption of the law establishing the rates, which had been contested in the courts, did not consider it wise, necessary or expedient that the companies should be given the opportunity of also contesting these rates before the Public Service Commissions.  Further it had been developed before the committee that the cost of producing gas had steadily declined, by reason of increase in the demand and improvements in the art of manufacture, although the cost of labor had increased.  From the experience of the past, it was thought that there was no necessity to provide for an increase of rates above the statutory rate.  The extraordinary conditions arising out of the World War could not have been apprehended.  Experience has shown that the forecast of the future was at fault; that it would have been wiser and more in keeping with the purposes of the act as originally enacted if the power of the Public Service Commissions had not been thus limited.  This court, therefore, expresses the hope that such limitation may be removed to the end that such flexibility be given to the operation of the statute that the Commissions may be open to the determination and adjustment of conflicting claims of consumers and the companies as to what are reasonable rates, fair both to the companies and to the public, at all times and under all circumstances, as was originally intended.

In the case of *Willcox* v. *Consolidated Gas Co.* (*supra*) chapter 736 of the Laws of 1905 was considered and found to be constitutional and valid, the court saying: " Lastly, it is

objected that there is an illegal discrimination as between the city and the consumers individually. We see no discrimination which is illegal or for which good reasons could not be given. But neither the city nor the consumers are finding any fault with it, and the only interest of the complainant in the question is to find out whether, by the reduced price to the city, the complainant is upon the whole unable to realize a return sufficient to comply with what it has the right to demand. What we have already said applies to the facts now in question.

" We cannot see from the whole evidence that the price fixed for gas supplied to the city by the wholesale, so to speak, would so reduce the profits from the total of the gas supplied as to thereby render such total profits insufficient as a return upon the property used by the complainant. So long as the total is enough to furnish such return it is not important that with relation to some customers the price is not enough." (p. 54.)

The complaint in the instant case alleges that the total receipts from the plaintiff's gas business during the year 1918 were $213,471.22; of this amount $1,107.75 was received from the city, or about one-half of one per cent. In considering the question of confiscation this element would enter so slightly into the calculation that it should be disregarded.

The penalty provisions of chapter 125 of the Laws of 1906 and chapter 736 of the Laws of 1905 were declared unconstitutional by the Supreme Court of the United States in *Willcox* v. *Consolidated Gas Co. (supra)*, adopting the construction put upon the statutes by the Circuit Court. It may well be doubted whether if the question were presented to the Supreme Court again they would adhere to their decision. The theory on which these penalty provisions were held to be unconstitutional as stated in *Cotting* v. *Kansas City Stock Yards Co.* (183 U. S. 79, 100), upon which the Circuit Court relied, was that as the penalty attached to each violation of the act, if the State courts should construe as separate violations, not overcharges on each shipment of stock as an entirety, but overcharges on each head of stock received at the stock yards, penalties for these could amount to $15,000,000 for a single day's violations; and if the corporation unsuccessfully contested the constitutionality of the rate in the courts, the cumulated penalties,

in the aggregate, would either appropriate all of its property or subject it to an extravagant and unreasonable loss. This decision was generally followed. (*Ex parte Young*, 209 U. S. 123; *Willcox* v. *Consolidated Gas Co.*, 212 id. 19; *Missouri Pacific R. Co.* v. *Tucker*, 230 id. 340.) Thus the regulatory statutes of States were rendered impossible of enforcement by the imposition of penalties until the Supreme Court of Appeals of West Virginia made a most vigorous protest against it being assumed that the State Legislature acted in ignorance of the United States or State Constitution and the law, and that in construing such statutes the State courts would assume that the Legislature intended to penalize a party for resort to the courts for the purpose of invoking the constitutional protection of his property, or intended the imposition of penalties, designed really to enforce obedience to a valid law, to deter a party who in good faith believed the law to be invalid from having the question judicially determined. (*Coal & Coke Ry. Co.* v. *Conley*, 67 W. Va. 129.) The United States Supreme Court, in construing the same statute, noted with approval the conclusion of the West Virginia court: " ' By the institution of a suit to determine whether such a statute is confiscatory in its operation in a particular case, such corporation alters its status from that of a mere corporation engaged in the public service, to that of a contestant of the legislative claim of right to take its property without due process of law; and, in the absence of expression of intent to the contrary, it is presumed the Legislature did not intend to affect, or interfere with, the assumption or maintenance of such status, nor to legislate upon the subject of such remedy; and the penal clause of such a statute, silent on the subject of remedy, has no application, while suit is pending, in good faith, for the determination of such question.' " The court further said: "As was said in *Western Union Telegraph Co.* v. *Richmond*, 224 U. S. 160, 172: ' If an oppressive application of them [the penalties] should be attempted, it will be time enough then for the appellant to file its bill.' " (*Chesapeake & Ohio Railway* v. *Conley*, 230 U. S. 513, 521. See, also, *Wadley Southern Railway* v. *Georgia*, 235 U. S. 651, 668.) However the Supreme Court of the United States might now interpret the penalty provisions of these statutes, it has declared them to be

unconstitutional and we are compelled to accept that conclusion. (*Willcox* v. *Consolidated Gas Co., supra.*)

In the complaint the plaintiff asks to have the penalty provisions of the Public Service Commissions Law declared unconstitutional. Although this question is not properly involved, we would call the attention of the plaintiff to the provision of section 24 of the said law (as amd. by Laws of 1916, chap. 546), that when it shall appear in any action to recover penalties or forfeitures that the defendant was actually and in good faith prosecuting a suit, action or proceeding in the courts to set aside the order of the Commission, the court shall remit the penalties or forfeitures incurred during the pendency of such suit, action or proceeding, which removes the grounds assigned for declaring the other statutes unconstitutional. Likewise, the court is asked to declare certain sections of that law unconstitutional on the ground that other companies, the rate of whose charges has not been fixed by statute, may resort to the Commission, while because the plaintiff's rate has been so fixed, such resort is denied to it, it is, therefore, deprived of the equal protection of the laws. (See U. S. Const., 14th Amendt. § 1.) There is nothing to this contention. The prohibition applies equally to all other companies similarly situated. The Legislature had the power to establish a rate that would be a proper charge in one locality, without fixing the rate for all localities, and it has the undoubted right to fix the rate as to some companies and provide a subordinate body to fix the rate as to others. Such a classification is a valid exercise of its powers as long as there is no discrimination as between the members of a class.

We observe also that the plaintiff seeks to have its franchise included in its property upon the value of which an adequate return is to be estimated. It has been repeatedly held, and is now settled, that the franchise which it obtained from the State is not property devoted to the public use, upon the value of which it is entitled to a return from the rate charged for its service. It is hoped that the discussion of these questions in this opinion will tend to simplify the issues and lead to a more speedy determination of the case.

The order will, therefore, be reversed, with ten dollars costs and disbursements, and the demurrer overruled, with ten

dollars costs, with leave to the defendant to withdraw the demurrer and serve an amended answer within twenty days from service of a copy of the order to be entered hereon with notice of its entry upon payment of such costs.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and demurrer overruled, with ten dollars costs, with leave to defendant to withdraw demurrer and to answer on payment of said costs.