## LOUISIANA WATER CO. v. PUBLIC SERVICE COMMISSION OF MISSOURI et al. (CITY OF LOUISIANA, Intervener).

(District Court, W. D. Missouri, C. D. December 11, 1923.)

No. 35.

**I. Public service commissions ⬤⟹7—Commission without power to impose confiscatory rates.**

A public service corporation is entitled to earn a fair return on the reasonable value of its property at the time it is being used for the public, and a rate fixed by a public service commission, under power delegated to it by the Legislature, which does not furnish such fair return is confiscatory in effect, and in violation of the Constitution of the United States.

**2. Waters and water courses ⬤⟹203(6)—Water company entitled to amortize losses sustained under rates fixed by public authority.**

A water company which, under rates fixed by a public service commission, has sustained a continuous loss during a period of years is entitled to amortize such loss, and future rates fixed by the commission should be so adjusted as to permit such amortization.

**3. Waters and water courses ⬤⟹203(12)—Enforcement of confiscatory rates may be enjoined.**

While a court of equity cannot make rates for a water company, it may interfere by injunction where rates prescribed by regulatory authorities are confiscatory.

In Equity. Suit by the Louisiana Water Company against the Public Service Commission of the State of Missouri and others, with the City of Louisiana intervening. Decree for complainant.

This is a suit by injunction to prevent the Public Service Commission of the state of Missouri from any interference "with complainant putting into effect and collecting just and reasonable rates and charges, * * * and from enforcing or attempting to enforce against complainant herein any of the penalties prescribed by law for its refusal to collect the rates and charges established by the Commission in its order of June 23, 1920."

At a preliminary hearing a certain proposed schedule of rates, previously submitted to the defendant Commission, was authorized by the court. By this order the excess over rates approved by the Commission was to be impounded and held pending the final determination of the questions involved here. Our inquiry, arising upon the bill and evidence, is whether the schedule of rates determined and prescribed by defendant Commission is confiscatory, and therefore violative of articles 5 and 14 of the Amendments to the Constitution of the United States.

Prior to June 19, 1915, complainant was operating its water system in the city of Louisiana under franchise and contract agreement with said city fixing rates for the service. On that date the city of Louisiana, intervener herein, complained to the defendant Commission about said rates, and in its complaint charged that the rates then in effect were excessive. In the beginning the complainant challenged the jurisdiction of the Commission, but subsequently submitted itself to the jurisdiction of the Commission and filed its application for an increase in such rates, averring that such rates were inadequate and confiscatory. Upon a hearing the Commission, by order dated January 29, 1918, allowed an increase in such schedule of rates. The Commission used as a basis for its calculation a valuation of $102,000 on the utility properties, "which said sum is hereby fixed and determined by the Commission to be the fair present value of said property, as of said date, for the said purpose of determining reasonable and just rates in these cases."

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Commission affirmatively found "that the rates and charges of the said defendant company for water service, now on file with this Commission and in force and effect, are unreasonable and unjust, and do not afford a reasonable return to said defendant company upon the value of its property used in said service," and fixed 7½ per cent. for return on investment and 2 per cent. for depreciation. It specifically determined that complainant's rules as to charges for meters and service pipes were unreasonable and unjust, and ordered "that defendant be and is hereby required, within a period of six months from date of order, to acquire and own all meters used by it for measuring the water supplied to its water consumers; that such meters must be purchased at the price paid by the consumers, less 7 per cent. depreciation for each year the meter has been in service for the first ten years."

Subsequently, and on June 23, 1920, upon application of the complainant herein, the Commission ordered a further increase of rates, and at that time fixed the value of complainant's property at $104,156.32, which included the addition of betterments in the sum of $2,156.32. Specifically referring to the order of January 29, 1918, the Commission reiterated its judgment that complainant was entitled to a return of 7½ per cent. on its investment, plus an allowance of 2 per cent. for depreciation, making a total of 9½ per cent. over and above operating expenses, and said that "increased operating costs, combined with other ailments, have precluded applicant from receiving the benefits that were intended in our former decision. The applicant has added betterments in the amount of $2,156.32 since the finding of the former base rate of $102,000, which makes the present value of $104,-156.32, upon which applicant is entitled to earn investment return plus a yearly rate of depreciation. In the former case we provided for additional new revenue to the applicant of approximately $4,600 yearly. The results from the new rates have been disappointing. * * * When we rendered decision in the former case of this utility we made a most careful scrutiny of the items constituting its operating expenses. We found little to warrant a criticism thereof. The evidence shows that applicant is continuing the commendable policy of practicing economy in its expenditures on every hand. It has no top-heavy salary expenses in any particular. Like all other utilities, it has been required to meet heavy increased operating costs."

The Commission reported that the complainant's failure to receive compensatory revenue was due to the fact that a large number of its customers "enjoy unrestricted flat rates," and accordingly the Commission ordered it "to install meters on or before January 1, 1921, on all services through which water is now furnished by flat rates, and to furnish water thereafter only through meters." This order allowing an increase became effective July 1, 1920, and was to continue for a period of 13 months, or until August 1, 1921. At the latter date it was ordered that such increased rates should cease, and that the rates and charges of the complainant be reduced and restored to the rates and charges on file and in effect previous to such order. However, on the 27th day of July, 1921, upon a "showing that the revenues were $26,013.06, and operating expenses $23,186.96, leaving for interest and depreciation $2,826.10, it is therefore, after due deliberation, ordered that the Louisiana Water Company may continue in force and effect as its maximum rates and charges for water service at Louisiana, Mo., the rates and charges as authorized and set out in the Commission's order herein, on June 23, 1920," and that such rates should continue until September 1, 1922.

Previously, and on July 25, 1921, complainant had made another application for an increase in its operating revenue. On February 3, 1922, the Commission refused such increase upon the grounds that, regardless of all other considerations "the investment return can only be forthcoming where predicated upon reasonable rates and charges to the consuming public. * * * The Commission is constrained to remark at this time that it thinks these rates have about reached the limit controlling reasonable rates. The applicant is collecting the 2 per cent. per annum to cover our depreciation allowance, but is unable to secure the 7½ per cent. yearly investment return upon its property as found due it by our former order."

The Commission thereupon dismissed the complainant's application for a schedule of increased rates and charges, but retained jurisdiction of the subject-matter. It vacated former orders and extended the schedule of rates then in effect to the 1st day of January, 1923, "and to continue in full force and effect thereafter until otherwise ordered by the Commission."

Complainant filed its petition for a rehearing, which said petition was denied by the Commission on the 29th day of April, 1922. This suit was filed June 12, 1922.

It is not controverted here that the schedule of rates prescribed by the Commission and in force at the time this suit was filed had not yielded to complainant compensatory revenues. For the 6 months ending December 31, 1922, the total revenues of complainant were $12,171.93, whereas the total operating expenses amounted to $11,640.64, leaving $531.29 as a balance for return on the investment and for depreciation. For the entire year of 1922, upon said schedule of rates, the gross earnings of complainant were $23,632.36. Its operating expenses amounted to $22,916.38, leaving a balance of $715.98 for investment return and depreciation.

The value of utility properties fixed by the Commission on March 1, 1917, was $102,000. Since said date up to December 31, 1922, betterments and additions were made in the sum of $18,118, making a total value of $120,118 at the latter date. The above figures are taken from the testimony of the complainant at the hearing, and are not controverted by the defendant or intervener.

The defendant Commission and intervener on their part attempted to show that other cities of similar size and like situation were not required to assume rates so burdensome as proposed by complainant, and it was contended that the city of Louisiana, for such municipal service as complainant was required to give, was not qualified under the taxation law to meet such increase. The testimony did not sustain the latter contention, as neither by valuation of property nor rate assessment is intervener in any manner disqualified to meet the proposed increase in rates. It was further shown that since the defendant Commission assumed jurisdiction to regulate the rates of complainant it has suffered a loss in the sum of $35,036. This is undisputed. Such loss, of course, is based upon the Commission's determination that 7½ per cent. would be a fair investment return and that 2 per cent. should be allowed for deterioration, and covers a period of nearly 5 years.

Upon this record it must be determined whether the schedule of maximum rates prescribed by defendant Commission is so low as to amount to a confiscation of complainant's property, and whether complainant is entitled to recover losses sustained upon the schedule of rates heretofore provided by the Commission.

Matson & Cowherd, of Louisiana, Mo., and Warren R. Voorhis, of New York City, for complainant.

L. H. Breuer, Gen. Counsel, of Rolla, Mo., and Frank E. Atwood, Asst. Gen. Counsel, of Carrollton, Mo., for defendant Public Service Commission.

J. E. Pew, City Atty., and Pearson & Pearson, all of Louisiana, Mo., for intervener.

REEVES, District Judge (after stating the facts as above). [1] 1. Complainant is entitled to demand a fair return upon the reasonable value of its property at the time such property is being used for the public. San Diego Land & Town Co. v. National City, 174 U. S. 739, loc. cit. 757, 19 Sup. Ct. 804, 43 L. Ed. 1154; San Diego Land & Town Co. v. Jasper, 189 U. S. 439, loc. cit. 442, 23 Sup. Ct. 571, 47 L. Ed. 892; Denver v. Denver Union Water Co., 246 U. S. 178, loc. cit. 190, 191, 38 Sup. Ct. 278, 62 L. Ed. 649. There is no controversy here as to the value claimed by complainant, and upon such valuation the

Commission has heretofore determined 7½ per cent. as a fair and reasonable return, with an allowance of 2 per cent. for depreciation. It is the law that, where the rate fixed by the Legislature or a subordinate body, to whom the power has been delegated, does not furnish a fair return upon the reasonable value of the property at the time it is being devoted to the public use, such act is so confiscatory in its effect as to violate the Constitution of the United States. Bronx Gas & Electric Co. v. Public Service Com'n, 190 App. Div. 13, 180 N. Y. Supp. 38, loc. cit. 44; Willcox v. Consolidated Gas Co., 212 U. S. 19, loc. cit. 41 and 51, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. (N. S.) 1134. Moreover, no rate of return can be deemed reasonable which is not high enough to attract capital to the form of investment involved in utility properties, and a return of 8 per cent. upon the fair value of such utility properties has been held to be reasonable. Alton Water Co. v. Illinois Commerce Commission (D. C.) 279 Fed. 869, loc. cit. 873; City of Toledo v. Toledo Rys. & Light Co., 259 Fed. 450, loc. cit. 455, 170 C. C. A. 426.

Upon the facts in this case the complainant company, as may be deduced from its schedules of receipts and disbursements, has received practically nothing on account of investment return and depreciation. Defendant Commission in effect admits this, but says that it has raised the rates on behalf of complainant until such "rates have about reached the limit controlling reasonable rates." The slight gain which the consumers might obtain from a refusal to allow an increase in rates is as nothing compared with the loss that each consumer would sustain if ruin should be brought to this utility because of refusal to allow it a just return for its service and for depreciation. The defendant Commission has undertaken the delicate and dangerous function of regulating complainant's rates, and such regulation should be continued with a sense of justice, not only to the complainant, but to the consuming public as well. City of Knoxville v. Knoxville Water Co., 212 U. S. 1, loc. cit. 18, 29 Sup. Ct. 148, 53 L. Ed. 371.

[2] 2. From the testimony it is evident that the complainant, under the regulation of the defendant Commission, has sustained a loss of $35,036 covering a period of nearly five years. It should be allowed to amortize its losses (Galveston Elec. Co. v. Galveston et al., 258 U. S. 388, 42 Sup. Ct. 351, 66 L. Ed. 678), as such losses accrued under the regulation of this Commission. The period of recoupment should be as extensive as the period of loss. The company, however, agrees that such recovery may comprise a period of 10 years. Future rate schedules should be so adjusted as to permit the amortization of this loss.

[3] 3. The right of the complainant to proceed by injunction here is not challenged. The court cannot make rates, but it may interfere where the schedule of rates submitted by regulatory authorities is confiscatory. City of Toledo v. Toledo Rys. & Light Co., 259 Fed. 450, loc. cit. 455, 170 C. C. A. 426; City of Knoxville v. Water Co., 212 U. S. 1, loc. cit. 18, 29 Sup. Ct. 148, 53 L. Ed. 371.

From the foregoing it is apparent that the rates prescribed by the defendant Commission are inadequate, unjust, and confiscatory, and therefore in contravention of the Fifth and Fourteenth Amendments

to the Constitution of the United States. The temporary injunction heretofore granted will continue in accordance with the prayer of the bill for such relief until said Commission may prescribe and promulgate just and reasonable rates for complainant, and in the interim the schedule of rates heretofore filed with said Commission, and effective under the temporary restraining order, shall continue. The excess of collections over former and suspended rates now deposited or impounded with the clerk of this court shall be released after payment of expenses to complainant. Until such orders have been made by the Commission, this court will retain jurisdiction of the case.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes