## CITIZENS' GAS CO. OF HANNIBAL v. PUBLIC SERVICE COMMISSION OF MISSOURI et al. (CITY OF HANNIBAL, Intervener).

(District Court, W. D. Missouri, C. D. March 4, 1925.)

No. 34.

**1. Public service commissions ☞7—For rate purposes, value of property is cost of reproduction, less depreciation at time in question; "fair value."**

The "fair value" of a public utility's physical property, for rate purposes, is the cost of reproduction, less depreciation at time in question, whether more or less than original cost,

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fair Value.]

**2. Public service commissions ☞7—Going value considered in rate making.**

Going value is an element generally allowed in rate making.

**3. Public service commissions ☞7—Utility held not entitled for rate purposes to allowance of item of value old plant amortized.**

Value of utility's old plant *held* not to be considered a loss to be amortized for rate purposes, merely because its franchise from city provided that "the new plant now contemplated by" it should be constructed at some place other than the location of the plant then in operation.

**4. Public service commissions ☞7—7.6 per cent. reasonable and fair return for utility.**

Rate of return of 7.6 per cent., conceded by Public Service Commission to utility, should be considered a reasonable and fair return, in the absence of a showing to the contrary.

**5. Public service commissions ☞7—Operating expenses of utility to be allowed, in absence of abuse of discretion.**

In the absence of evidence of abuse of discretion by utility's officers in matter of operating expenses, the Public Service Commission may not disregard them in the fixing of proper rates.

**6. Public service commissions ☞7—In view of valuation of utility's property and net returns prescribed, rates held confiscatory.**

In view of valuation of utility's property and its net returns, *held,* schedule of rates fixed by commission was confiscatory.

**7. Public service commissions ☞7—No order for amortization for losses of value of property under enforced rates, in absence of certainty.**

No order for amortization of losses of a public utility under enforced schedules of commission will be made in injunction suit; the evidence leaving uncertainty as to value of property employed.

In Equity. Suit by the Citizens' Gas Company of Hannibal against the Public Service Commission of Missouri and its members; the City of Hannibal intervening. Decree for complainant.

L. H. Breuer, Gen. Counsel, of Rolla, Mo., Frank E. Atwood, Asst. Counsel, of Carrollton, Mo., for Public Service Commission.

John G. Cable, City Atty., of Hannibal, Mo., for city of Hannibal.

Hal H. Smith, of Detroit, Mich., Sebree, Jost & Sebree, of Kansas City, Mo., and Schofield & Plowman, of Hannibal, for Citizens' Gas Co. of Hannibal.

REEVES, District Judge. Complainant is a public utility corporation located at Hannibal, Mo., where it is engaged in the manufacture and sale of gas. The defendants and their successors constitute the Public Service Commission of the state of Missouri. This proceeding is by bill in equity to annul an order of the said commission, dated March 17, 1922, wherein said commission refused to advance the schedule of rates on behalf of complainant as prayed, and it is sought to restrain interference by defendant commission with the exaction by complainant of what it conceives to be adequate and legal charges.

Incidental matters are, of course, covered by the bill, all of which will be considered. Complainant invokes the jurisdiction of this court upon the ground that the limitations placed upon its revenue by the commission amount to a confiscation, and that therefore such order impinges upon the Fourteenth Amendment to the national Constitution. The defendant denies the invalidity of its order, and asserts in substance that the prescribed rates yield a sufficient income upon a fair valuation of the property of the complainant to meet all of its obligations, including a proper amount for depreciation and a fair return to the owners, when computed upon a correct valuation of complainant's property.

The main controversy arises upon the proper valuation of the utility plant. Complainant fixes such valuation at $470,000, whereas the defendant commission says that its valuation will not exceed $329,000. Com-

plainant says it ought to be permitted to capitalize the cost of an abandoned plant, which it estimates at $40,000. The commission rejects this. The company seeks to have its losses sustained under the regulation of the commission amortized. It believes that its rate of return should be 8 per cent. These several questions, with others, will be stated and discussed in the memorandum opinion.

[1] 1. In the matter of the valuation of the company's plant, the difference of opinion arises mainly upon a question of law rather than upon an appraisal of the property. This question was brought into the case by the answer of the defendant commission, wherein it averred "that, in determining the present fair value of complainant's property, the defendant commission allowed the estimated cost of complainant's equipment in place *at the time and under the conditions of its construction and installation,* and that, where equipment was installed at abnormally high current prices, such prices were included to the full extent to which they were actually incurred." The complainant, on the other hand, "insists that the predominating factor in the determination of the fair value of the physical property is the cost of reproduction, less depreciation, computing that cost on present day prices."

The company is correct. Southwestern Telephone Co. v. Public Service Commission, 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807. Mr. Justice McReynolds, speaking for the majority of the court, quoted approvingly from Willcox v. Consolidated Gas Co., 212 U. S. 19, loc. cit. 41 and 52, 29 S. Ct. 192, 195 (53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. [N. S.] 1134), as follows:

"There must be a fair return upon the reasonable value of the property at the time it is being used for the public. * * * And we concur with the court below in holding that the value of the property *is to be determined as of the time when the inquiry is made regarding the rates.*"

If the property which legally enters into the consideration of the question of rates has increased in value since it was acquired, the company is entitled to the benefit of such increase. Minnesota Rate Cases, 230 U. S. 352, loc. cit. 454, 33 S. Ct. 729, 762 (57 L. Ed. 1511, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18).

"The making of a just return for the use of the property involves the recognition of its fair value, if it be more than its cost. The property is held in private ownership,

and it is that property, and not the original cost of it, of which the owner may not be deprived without due process of law."

To the same effect was the holding in Bluefield Co. v. Pub. Serv. Comm., 262 U. S. 679, 43 S. Ct. 675, 67 L. Ed. 1176, wherein Mr. Justice Butler, quoting from Smyth v. Ames, 169 U. S. 466, loc. cit. 547, 18 S. Ct. 418, 434 (42 L. Ed. 819) said:

"What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience."

The testimony, on behalf of the defendant commission, showed that its engineers made all their appraisals upon a basis of original cost. This allowed nothing for current prices. This method would be unfair to the public if prices had declined, and unfair to the company if prices had advanced. In view of the methods employed in such appraisal, the court must reject all the evidence offered by the commission to sustain its valuation of the utility properties.

Adverting to the testimony of complainant's witnesses, it appears that the valuations made by such witnesses were in accordance with the formula allowed by the court. In determining the value of such properties, complainant's witnesses appended to the inventory current prices, and from these deducted depreciation for use and obsolescence.

Witness James Allison, a consulting engineer for complainant, testifying on its behalf, said that his estimates of reproduction cost was based upon practically the same inventory as that used by the commission, and that there was no disagreement on the question of original cost; the only difference being that the commission rejected current prices and employed prices current at the date of installation, which means, of course, original cost, and from this cost it deducted for depreciation. Mr. Allison deducted nothing for depreciation. He fixed the value of the company's property according to current prices, upon the basis of new property, at $516,806. To this sum he added certain intangibles, such as overhead expenses, etc., estimated at $82,131.

[2] The more satisfactory testimony, however, was given by Mr. H. M. Eaton, the treasurer of the company, who acts as the general manager and engineer. His appraisal of the company's property was made as of June 1, 1921. The units of property were taken as of June 1, 1921, but the prices applied were those of 1915. In order, then, to bring the appraisal to the date of the hearing, the totals of the appraisal were increased according as the prices of the various units

had increased between 1915 and 1923, thus giving an appraisal of the property as it stood as of the date of the hearing and on the basis of the prices and values likewise of that date. He gave the cost of reproduction new, as of October 1, 1923, of the physical property as $489,539, and, after deducting what he conceived to be a proper amount for depreciation, he fixed the then value of the physical property as of October 1, 1923, at $423,933. To this he proposed to add for working capital, material, and supplies the sum of $40,000. He proposed, also, to include in his valuation an item of $40,000 for an abandoned plant, which item will be considered hereafter. He also proposed that there should be added a going value of $59,500. This appraisal appears to be the more acceptable for a rate base. Going value is a very comprehensive term, and is an element generally allowed in rate making, and has been recognized by the defendant commission. In re Capital City Water Co., 5 Mo. Pub. Serv. 638. From the evidence, the court is not prepared to say that the item named is excessive.

[3] The item of $40,000, given as "value old plant amortized," should not be allowed. Complainant received its franchise by an ordinance of the city of Hannibal, approved July 5, 1910. Section 6 of said ordinance is as follows:

"The new plant now contemplated by the said Hannibal Light & Fuel Company shall be constructed at some place other than the location of the plant now in operation, and said new plant shall be completed within one year from and after the passage of this ordinance and shall cost not less than fifty thousand dollars."

Clearly this provision in the company's franchise was put there at its instance, and the only burden imposed by such provision was the one of selecting a new location, *if it built a new plant as contemplated.* The city did not undertake to specify where such location should be, and so far as the evidence shows it may have been a valuable privilege rather than an onerous burden upon the complainant. Apparently the only additional cost would be the purchase of a new site. The old site, in the absence of testimony to the contrary, would stand as an offset to the new. Adding to Mr. Eaton's valuation of the physical property depreciated, which he fixed at $423,933, the $40,000 allowed for working capital and the $59,500 going value, the value of the company's property as of October 1, 1923, would stand at $523,433. This includes the betterments

and permanent improvements to that date, and this total sum would constitute a base for rate calculation.

The percentage of depreciation used by the company's engineers was 13.4 per cent. and seems reasonable. The amount of working capital, etc., fixed by the company at $40,000, may be accepted as proper for all of the purposes of this review.

[4] 2. *Rate of Return.* As was said in the Bluefield Case, supra, loc. cit. 692 (43 S. Ct. 679):

"What annual rate will constitute just compensation depends upon many circumstances, and must be determined by the exercise of a fair and enlightened judgment, having regard to all relevant facts. A public utility is entitled to such rates as will permit it to earn a return on the value of the property which it employs for the convenience of the public equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties."

The difference between the parties is so small that little need be said; 7.6 per cent. is conceded, whereas 8 per cent. is demanded. Upon the record here, no reason appears why the judgment of the Public Service Commission should not be accepted and be controlling, as a rate of return less than this has in a number of cases been permitted to stand as reasonable and fair.

[5] 3. In the matter of the operating expenses no comment need be made. So far as the record here shows, such expenses are reasonable. The defendant in the order challenged did not take exceptions to such expenses. On the question of operating expenses of public utilities, the following from the Southwestern Telephone Co. Case, supra, loc. cit. 289 (43 S. Ct. 547), is apposite:

"It must never be forgotten that, while the state may regulate with a view of enforcing reasonable rates and charges, it is not the owner of the property of public utility companies, and is not clothed with the general power of management incident to ownership."

The commission is not the financial management of the corporation, and is not empowered to substitute its own judgment for that of the directors of the corporation. There is no evidence of an abuse of discretion by the corporate officers in the matter of expenses.

[6] 4. From the foregoing, as a premise or postulate, it must be determined whether the

present schedule of rates prescribed or allowed by the defendant is tantamount to the confiscation of the company's property. The schedule of rates authorized by the commission is as follows: For the first 5,000 cubic feet per month, $1.75 per M cubic feet. For the next 5,000 cubic feet per month, $1.55 per M cubic feet. All over 10,000 cubic feet per month, $1.35 per M cubic feet. Minimum bill 60 cents per month. An additional charge of 10 cents per M cubic feet is allowed if bill be not paid by the 10th day of the succeeding month.

This schedule was first authorized on December 8, 1920, and reflects an increase of 45 cents per M cubic feet then permitted and the allowance of the minimum charge of 60 cents. The company had previously asked for a 50-cent increase and for a $1 minimum charge. Its application was filed on November 15, 1920, and it lacked 5 cents of getting the increase requested and 40 cents of getting the minimum charge it wanted. On October 23, 1921, an application was filed for the allowance of a service charge of 75 cents per meter monthly. This item was disallowed on March 17, 1922, and, as stated, complainant seeks to nullify the order denying this increase.

Upon the schedule allowed December 8, 1920, the company had a net return of $16,889.79 for the year 1921. For the year 1922, on the same schedule, its net return was $26,155.71; and for the first nine months of 1923, its return was $21,659.51. It is a simple matter of computation to determine that upon the valuation of October 1, 1923, the schedule of rates prescribed is confiscatory. It does not yield a return conceded to be fair by the defendants. The foregoing represents a net result after a reasonable allowance for depreciation, the percentage not appearing; 2½ per cent. is not unreasonable on depreciatory property.

[7] 5. A further claim is made by complainant for an allowance to recoup losses sustained under the enforced schedules of the commission. This was not specifically covered by the bill, but complainant asks for general relief. "Equity delights to do justice and not by halves," and, as the question is now in the case, the court will give it consideration.

In view of the uncertainty of the valuation involved in this case and the wide divergence of views expressed on the two sides, a satisfactory basis has not been heretofore reached, and no order should now be made in favor of complainant. In the Louisiana Water Co. Case (D. C.) 294 F. 954, recoupment was

allowed because there was no dispute as to the value of the property employed in the public service; whereas in the instant case there is a wide range of judgment and a justifiable controversy.

No order will therefore be made, allowing for recoupment or amortization; otherwise, the injunction will stand until the Public Service Commission has allowed and promulgated a schedule of rates responsive to this opinion.