In the Matter of the CITY OF NEW YORK, Petitioner, against BENJAMIN F. FEINBERG et al., Individually and Constituting the Public Service Commission of the State of New York, et al., Respondents.

Supreme Court, Special Term, Albany County, June 6, 1950.

*John P. McGrath, Corporation Counsel (James J. Thornton, Arthur J. Goldsmith* and *William A. Marks* of counsel), for petitioner.

*Sherman C. Ward, Frank C. Bowers* and *Raymond J. McVeigh* for members of the Public Service Commission of the State of New York, respondents.

*Colley E. Williams* and *Sydney L. Davis* for Brooklyn Borough Gas Company, respondent.

TAYLOR, J. This is a proceeding in the nature of certiorari pursuant to article 78 of the Civil Practice Act to review an order and determination of the respondents constituting the members of the Public Service Commission of the State of New York and for an order vacating and annulling the order of such commission fixing an interim or temporary rate for gas furnished by the respondent, Brooklyn Borough Gas Company, to the City of New York for housing projects in said city under the management of its housing authority.

It appears from the petition that the commission by order dated March 19, 1947, directed an inquiry as to the proposed gas rates to be charged by the respondent company and that thereafter during the pendency of such investigation a petition was filed by the respondent company wherein it sought, among other things, that the commission determine and prescribe temporary or interim rates to be charged by the company to the City of New York for gas service supplied to housing projects operated by its housing authority and located within the company's franchise territory. Thereafter the commission granted the interim relief sought and by its order dated April 6, 1949, directed the company to charge the city for gas supplied to its housing projects at the rate set forth in Service Classification 2 of its filed tariff, which rates were in excess of those which had theretofore been in effect. Final and permanent gas rates to be charged have not as yet been determined.

The respondents have moved for an order dismissing the petition herein as a matter of law upon the ground that it appears on its face that the same is insufficient in law in that it does not state facts sufficient to constitute grounds for the relief sought therein.

It is urged by the petitioner that the orders of the commission dated April 6, 1949, and May 17, 1949, fixing temporary rates for gas furnished to the housing projects of the City of New York are void, illegal, contrary to law, unauthorized by law and beyond the jurisdiction and powers of the commission. A mandatory hearing pursuant to statutory direction at which evidence was taken has been had herein but the petition contains no challenge of the competency or sufficiency of the evidence under subdivisions 6 or 7 of section 1296 of the Civil Practice Act and, hence, the proceeding need not be transferred to the Appellate Division for disposition.

The respondents' motions have been made pursuant to section 1293 of the Civil Practice Act to dismiss the petition as a matter of law. The parties both on the oral argument and in their briefs have conceded the question to be one of law. The authority of the commission to make the orders which it has is attacked. That question can be determined by the Special Term under subdivisions 1 through 5 of section 1296 (*supra*).

This controversy involves the judicial construction of chapter 736 of the Laws of 1905 in connection with section 72 of the Public Service Law.

The former provides in part as follows: " Section 1. A corporation, association, copartnership or person engaged in the business of furnishing or selling illuminating gas in the city of New York, shall not charge said city or receive therefrom for such gas, a sum in excess of seventy-five cents per one thousand cubic feet."

At the same session of the Legislature a Commission of Gas and Electricity was also created which was authorized by the statute which established it to fix the price of gas or electricity within the limits prescribed by law. (L. 1905, ch. 737, § 17.) Chapter 429 of the Laws of 1907 established the Public Service Commissions (§ 4) and abolished the Commission of Gas and Electricity (§ 81). In enacting that chapter, the Legislature provided the procedure for the Public Service Commissions to follow in fixing the maximum price of gas or electricity " within lawful limits " (§ 72).

In 1910 by chapter 480 of the laws of that year (Consolidated Laws, ch. 48) the statute was again amended to permit the com-

mission to fix the maximum price of gas or electricity by providing that in so doing it should not exceed that fixed by statute. It read, insofar as pertinent here, as follows: "After a hearing and after such an investigation as shall have been made by the commission or its officers, agents, examiners or inspectors, the commission within lawful limits may, by order, *fix the maximum price of gas or electricity not exceeding that fixed by statute* to be charged by such corporation or person, for the service to be furnished; * * *." (Public Service Commission Law, § 72; emphasis supplied.) Thus, the commission might thereunder decrease the rates below the statutory maximum rate but was unauthorized to increase them above that rate.

In 1921 the Legislature again amended section 72 of the Public Service Law (L. 1921, ch. 134, § 49, eff. March 30, 1921) to read pertinently as follows: "After a hearing and after such an investigation as shall have been made by the commission * * * the commission may, by order, fix just and reasonable prices, rates and charges for gas or electricity to be charged by such corporation or person for the service to be furnished *notwithstanding that a higher or lower price has been theretofore prescribed by general or special statute* * * *." (Emphasis supplied.) The quoted portion of the statute has remained in *statu quo*.

It is the contention of the petitioner that by chapter 736 of the Laws of 1905 the Public Service Commission is prohibited from fixing a rate for gas service to the city in excess of seventy-five cents per thousand cubic feet as therein provided.

The respondents contend that in the absence of a contract between the municipality and a public service corporation which is exempted by statute from the jurisdiction of the commission (Public Service Law, § 66, subd. 12) the commission under section 72 of the Public Service Law as now amended is given power to fix rates for gas supplied to municipalities. In other words, they assert that the latter section by implication has repealed the former.

In *Bronx Gas & Elec. Co. v. Public Service Comm.* (190 App. Div. 13) decided in 1919, it was held that the Legislature by chapter 480 of the Laws of 1910 had limited the powers of the commission to fix the maximum price of gas or electricity not exceeding that fixed by statute to be charged by a public service corporation and then significantly pointed out the lack of wisdom of a statute so inflexible to the needs of changing times and expressed the hope that the limitations imposed thereby might be removed by the Legislature in the interests of the consuming

public and public service corporations. The court wrote at page 22: "From the experience of the past, it was thought that there was no necessity to provide for an increase of rates above the statutory rate. The extraordinary conditions arising out of the World War could not have been apprehended. Experience has shown that the forecast of the future was at fault; that it would have been wiser and more in keeping with the purposes of the act as originally enacted if the power of the Public Service Commission had not been thus limited. This court, therefore, expresses the hope that such limitation may be removed to the end that such flexibility be given to the operation of the statute that the Commissions may be open to the determination and adjustment of conflicting claims of consumers and the companies as to what are reasonable rates, fair both to the companies and to the public, at all times and under all circumstances, as was originally intended."

In its annual report to the Legislature for the year 1920 the Public Service Commission for the First District urged the Legislature to give the commission complete power over public utility rates and stated its reasons therefor in the following words (pp. 9–11): "Under its present powers the Commission may reduce the rate but may not increase it above the statutory limit. The gas companies, faced with the increased costs due to war and post-war conditions, not being able to obtain relief from the Commission, have appealed to the courts upon the ground that the rates fixed by statute are confiscatory. In the great majority of cases the courts have held the statutory rate confiscatory and have authorized the gas companies to increase their prices, and have restrained the Public Service Commission from enforcing the statutory rate. This has resulted in the destruction of uniformity. * * *

"From the court rulings it is evident that the statutory prices fixed fourteen years ago do not fit present conditions. It is for the Legislature to determine whether new maximum rates shall be established by it or whether the Public Service Commissions shall be empowered to fix such rates after proper investigation. In this connection there should be considered the cost to the community, through a multiplicity of legal proceedings, of the efforts of companies to obtain relief from a statutory mandate, which in the course of years may become arbitrary and obsolete. * * * No less than sixteen different cases before the courts approximately at the same time demanded the attention of the Commission. In consequence the Commission had to make an

emergency appeal to the last session of the Legislature for extra appropriations. * * *

" The expense of such litigation adds greatly to the cost of Public Service Commission regulation. There is no doubt that if the Commissions themselves were given complete power over public utility rates, crises such as the present could be met in the orderly procedure of the Commission and recourse to the courts for relief from a statutory burden, with the consequent expenses it imposes upon the state, would be made unnecessary."

In construing the amendment of 1921 in connection with a similar statute (L. 1906, ch. 125) which restricted the maximum rate which might be charged by a corporation for illuminating power of given candles in the city of New York, the United States Supreme Court in *Newton* v. *Consolidated Gas Co.* (258 U. S. 165, 174) said: " Since March 30, 1921, the Public Service Commission has had power to prescribe rates for appellee unrestricted by the maximum specified in the Act of 1906; * * *."

In *People ex rel. Ulster & Delaware R. R. Co.* v. *Public Service Comm.* (171 App. Div. 607, affd. 218 N. Y. 643) a section of the Railroad Law which restricted the rate which might be charged for mileage books under a special statute was construed in connection with sections 49 and 33 of the Public Service Law. The Court wrote (pp. 610–611) : " In all the previous history of the Public Service Commissions Law the power of the Commission had been confined to reducing rates or at least to regulating rates within the statutory limitations. The law contemplated simply a reduction of rates by the Commission in the interests of the public and not an increase, even though such increase might be just and reasonable to the carriers. The effect of this new legislation was, I think, to make the Commission superior to section 60 of the Railroad Law, fixing limitations on the rates of fare. Those limitations remained on the railroads, but not on the power of the Commission. Sections 49 and 33 of the Public Service Commissions Law and the provisions of the Railroad Law, fixing and limiting fares, as we have seen, must be construed to all intents and purposes as if they were found in one statute and must be construed accordingly. My opinion is that section 60 of the Railroad Law establishes the maximum rate for mileage books in the absence of an order by the Commission. It represents the law on the subject so long as the Commission takes no action. But sections 49 and 33 of the Public Service Commissions Law authorized the Commission to make an investigation, and where it appears that the statu-

tory rate of two cents per mile is insufficient, the Commission may by order increase the rate above that amount."

The question certified to the Court of Appeals in that case was "Has the public service commission, second district, jurisdiction to authorize the Ulster and Delaware Railroad Company to charge a sum exceeding two cents per mile for its 500-mile and 1000-mile tickets described in section 60 of the Railroad Law?" The answer was in the affirmative. (218 N. Y. 643.)

The Legislature by the amendment of section 72 of the Public Service Law has expressed a clear intent to repeal by implication chapter 736 of the Laws of 1905 and, in the absence of a valid contract between a municipality and a public service corporation, to grant to the commission the power to fix by order just and reasonable rates to be charged for gas or electricity irrespective of an existing special statute which prescribed a lower maximum rate. (*City of New York* v. *Maltbie*, 274 N. Y. 90; *People ex rel. Ulster & Delaware R. R. Co.* v. *Public Service Comm., supra*; *Newton* v. *Consolidated Gas Co., supra*.)

To hold otherwise would be to disregard the plain language of the statute, the chronology and scope of its amendments, judicial and quasi-judicial recommendations, adjudicated analogy and the settled rules of statutory construction. The adoption of a hypothesis that the import of the section was to exclude from its purview and application a special statute which restricted the maximum rate which could be fixed for gas or electric service for the largest city in the State and undoubtedly one of the largest consumers of gas and electricity in the world would be to ignore not only unambiguous and explicit legislative expression but also manifest legislative intent.

This petition must be and hereby is dismissed, without costs.

Submit order accordingly.

All of the papers are being sent to counsel for the respondent, Brooklyn Borough Gas Company.